IN THE SUPREME COURT OF THE STATE OF IDAHO
Docket No. 49351

CHRISTOPHER PENTICO, a qualified
elector of the State of Idaho,

 Petitioner,

v.

IDAHO COMMISSION FOR
REAPPORTIONMENT and LAWERENCE
DENNEY, Secretary of State of the State of
Idaho, in his official capacity,

 Respondents.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Boise, January 2022 Term

Opinion Filed: February 11, 2022

Melanie Gagnepain, Clerk

Original proceeding before the Supreme Court of the State of Idaho.

The petition is <u>denied</u>.

Edward W. Dindinger, Dindinger & Kohler, PLLC; and Thomas J. Katsilometes, Thomas J. Katsilometes, PLLC, Boise, for petitioner, Christopher Pentico. Edward W. Dindinger argued.

Lawrence G. Wasden, Idaho Attorney General, Boise, for respondents, Idaho Commission for Reapportionment and Lawerence Denney. Megan A. Larrondo argued.

———————————

STEGNER, Justice.

This case arises out of a petition asserting the Idaho Commission for Reapportionment ("the Commission") violated Idaho Code section 72-1506 when it adopted Plan C03, the congressional reapportionment plan, following the 2020 federal census.

Under Article III, Section 2 of the Idaho Constitution, the six-member bipartisan Commission is tasked with reapportioning Idaho's congressional districts after each decennial federal census by creating new districts reflecting changes in population. These districts, collectively referred to as a "plan," must conform to the requirements set forth by the United States Constitution, the Idaho Constitution, and Idaho statutes. Petitioner Christopher Pentico argues that the Commission failed to timely submit its plan and final report, and that Plan C03 violates Idaho

Code section 72-1506 by splitting local precinct boundary lines. Pentico requests that this Court issue a writ of prohibition to restrain the Secretary of State from transmitting a copy of the Commission's Final Report and Plan C03 to the President Pro Tempore of the Idaho Senate and the Speaker of the Idaho House of Representatives. For the reasons discussed below, we decline to issue the writ Pentico seeks.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The federal government conducts a national census every ten years. When the results of that census are available, Article III, Section 2 of the Idaho Constitution requires a six-member bipartisan commission be formed to draw new congressional district boundaries. IDAHO CONST. art. III, § 2. Due to the ongoing Covid-19 pandemic, Idaho received the results of the 2020 federal census later than usual on August 12, 2021; the Secretary of State entered an order establishing the Idaho Commission for Reapportionment that same day. The six members of the Commission convened on September 1, 2021, to reapportion Idaho's two congressional districts.

On November 5, 2021, after weeks of traveling around the state and holding public hearings seeking feedback from residents, the Commission voted, four in favor to two against, to adopt Plan C03. On November 10, 2021, the Commission "reaffirmed its adoption" of Plan C03, adopted its "Final Report," and adjourned. The Commission filed its Final Report with the Secretary of State's office on November 12, 2021.

On December 15, 2021, Christopher Pentico, a voter registered in Idaho, timely filed a verified petition against the Commission and the Secretary of State (collectively "the Respondents"). Pentico urges this Court to determine the Commission failed to timely file Plan C03 and the Final Report, and asks us to review Plan C03 because it did not retain local precinct boundary lines, purportedly in violation of Idaho Code section 72-1506. On December 27, 2021, Pentico filed an amended verified petition asserting the same. The case then proceeded to argument before this Court.

## II. STANDARD OF REVIEW

"In accord with Article III, Section 2(5) of the Idaho Constitution, any registered voter, any incorporated city or any county in this state, may file an original action challenging a congressional or legislative redistricting plan adopted by the Commission on Reapportionment." I.A.R. 5(b). "The Supreme Court shall have jurisdiction to review, upon appeal, . . . any plan proposed by the commission for reapportionment created pursuant to section 2, article III" of the Idaho

Constitution. IDAHO CONST. art. V, § 9. "Within the time and manner prescribed by rule of the supreme court, any registered voter, incorporated city or county in this state may appeal to the supreme court a congressional or legislative redistricting plan adopted by the commission." I.C. § 72-1509(1).

"Article I, § 2, of the United States Constitution requires that Members of the House of Representatives 'be apportioned among the several States . . . according to their respective Numbers' and 'chosen every second Year by the People of the several States.'" *Tennant v. Jefferson Cnty. Comm'n*, 567 U.S. 758, 759 (2012) (quoting U.S. CONST. art. I, § 2). "[T]he commands require that 'as nearly as is practicable one man's vote in a congressional election is to be worth as much as another's.'" *Id.* (quoting *Wesberry v. Sanders*, 376 U.S. 1, 7–8 (1964)). "[T]he 'as nearly as is practicable' standard does not require that congressional districts be drawn with 'precise mathematical equality,' but instead that the State justify population differences between districts that could have been avoided by 'a good-faith effort to achieve absolute equality.'" *Id.* (quoting *Karcher v. Daggett*, 462 U.S. 725, 730 (1983)).

 "Both constitutional questions and questions of statutory interpretation are questions of law over which this Court exercises free review." *CDA Dairy Queen, Inc. v. State Ins. Fund*, 154 Idaho 379, 382, 299 P.3d 186, 189 (2012) (quoting *Stuart v. State*, 149 Idaho 35, 40, 232 P.3d 813, 818 (2010)).

### III.    ANALYSIS

**A.  The Commission filed its Final Report within the ninety-day deadline.**

Pentico first asserts that the Commission filed its Final Report late, in violation of Article III, section 2 of the Idaho Constitution and Idaho Code section 72-1508. Although the Commission voted to adopt its Final Report on November 10, 2021, the Final Report was not officially filed with the Secretary of State's office until 3:12 p.m. on November 12, 2021. Pentico argues this was two days too late.

Both parties agree that, once the Commission is "organized," the Commission must file its Final Report with the Secretary of State's office within ninety days. The parties' real disagreement is over the meaning of the term "organized." Pentico argues the Commission was organized on August 12, 2021, the day the Secretary of State issued his "Order Establishing Commission for Reapportionment[.]" Respondents counter that the Commission was organized on September 1,

3

2021, the day the Commission "elected its leaders and agreed upon the rules that governed its conduct[.]"

We conclude that the Commission was "organized" and the ninety-day time limit began to run on September 1, 2021, the day the Commission elected two of its commissioners as co-chairs of the Commission. "Where a statute or constitutional provision is clear we must follow the law as written." *Sweeney v. Otter*, 119 Idaho 135, 138, 804 P.2d 308, 311 (1990). "Where the language is unambiguous, there is no occasion for the application of rules of construction." *Id.* "The fundamental object in construing constitutional provisions is to ascertain the intent of the drafters by reading the words as written, employing their natural and ordinary meaning, and construing them to fulfill the intent of the drafters." *Id.* at 139, 804 P.2d at 312.

> When a question before this Court requires statutory interpretation, we apply the following principles:
>
>> The objective of statutory interpretation is to derive the intent of the legislative body that adopted the act. Statutory interpretation begins with the literal language of the statute. Provisions should not be read in isolation, but must be interpreted in the context of the entire document. The statute should be considered as a whole, and words should be given their plain, usual, and ordinary meanings. It should be noted that the Court must give effect to all the words and provisions of the statute so that none will be void, superfluous, or redundant. When the statutory language is unambiguous, the clearly expressed intent of the legislative body must be given effect, and the Court need not consider rules of statutory construction.
>
> *State v. Schulz*, 151 Idaho 863, 866, 264 P.3d 970, 973 (2011) (quoting *Farber v. Idaho State Ins. Fund*, 147 Idaho 307, 310, 208 P.3d 289, 292 (2009) (internal citations omitted)).

*Estate of Stahl v. Idaho State Tax Comm'n*, 162 Idaho 558, 562, 401 P.3d 136, 140 (2017).

> However, "[i]f the language of the statute is capable of more than one reasonable construction it is ambiguous," and a statute that is ambiguous must be construed with legislative intent in mind, which is ascertained by examining "not only the literal words of the statute, but the reasonableness of the proposed interpretations, the policy behind the statute, and its legislative history."

*BHC Intermountain Hosp., Inc. v. Ada Cnty.*, 150 Idaho 93, 95, 244 P.3d 237, 239 (2010) (quoting *State v. Yzaguirre*, 144 Idaho 471, 475, 163 P.3d 1183, 1187 (2007)). "A statute is not ambiguous merely because the parties present differing interpretations." *Id.* at 96, 244 P.3d at 240. "Instead, the statute is ambiguous only if more than one of the interpretations can be reasonably construed from the language of the statute." *Id.*

4

The issue at hand stems from the parties' differing interpretations of Article III, section 2 of the Idaho Constitution, which provides in relevant part:

> (2) Whenever there is reason to reapportion the legislature or to provide for new congressional district boundaries in the state, or both, because of a new federal census or because of a decision of a court of competent jurisdiction, *a commission for reapportionment shall be formed on order of the secretary of state*. The commission shall be composed of six members. The leaders of the two largest political parties of each house of the legislature shall each designate one member and the state chairmen of the two largest political parties, determined by the vote cast for governor in the last gubernatorial election, shall each designate one member. In the event any appointing authority does not select the members within fifteen calendar days following the secretary of state's order to form the commission, such members shall be appointed by the Supreme Court. No member of the commission may be an elected or appointed official in the state of Idaho at the time of designation or selection.

> (3) The legislature shall enact laws providing for the implementation of the provisions of this section, including terms of commission members, the method of filling vacancies on the commission, additional qualifications for commissioners and additional standards to govern the commission. The legislature shall appropriate funds to enable the commission to carry out its duties.

> (4) *Within ninety days after the commission has been organized* or the necessary census data are available, whichever is later, the commission shall file a proposed plan for apportioning the senate and house of representatives of the legislature with the office of the secretary of state. At the same time, and with the same effect, the commission shall prepare and file a plan for congressional districts.

IDAHO CONST. art. III, § 2 (italics added).

Reading Article III, section 2, we find Pentico's argument that the Commission was "organized" on August 12, 2021, unavailing for three reasons. First, the phrase "a commission for reapportionment shall *be formed* on order of the secretary of state" means that the Secretary of State's order is a prerequisite to forming a commission. *See* IDAHO CONST. art. III, § 2(2) (italics added). It is not the Secretary of State's role to "form" the commission. Rather, the Secretary of State issues an order *to form* a commission to those with authority to appoint the individuals who will serve on the commission.

Second, the provision lays out the process for choosing members of a commission. Notably, Article III, section 2(2) provides that "[i]n the event any appointing authority does not select the members within fifteen calendar days following *the secretary of state's order to form the commission*, such members shall be appointed by the Supreme Court." *Id.* (italics added). Again, this language means that the Secretary of State's order does not, by itself, organize a

commission; it merely directs that a commission be *formed*. In order for Pentico's interpretation to be correct, it would mean a commission could be "organized" before its members had been chosen.

Third, subsection 2 utilizes the verb "formed," as distinct from subsection 4, which utilizes the verb "organized." Merriam-Webster defines "form" as "to give a particular shape to[;] shape or mold into a certain state or after a particular model" and "to take form[;] come into existence[;] arise." *Form*, MERRIAM-WEBSTER, INC., https://www.merriam-webster.com/dictionary/form#synonyms (last visited Feb. 10, 2022). "Organize" is defined as "to form into a coherent unity or functioning whole[;] integrate[;]" "to set up an administrative structure for[;]" "to arrange by systematic planning and united effort[;]" and "to arrange elements into a whole of interdependent parts[.]" *Organize,* MERRIAM-WEBSTER, INC., https://www.merriam-webster.com/dictionary/organize#synonyms (last visited Feb. 10, 2022). Even though Pentico asserts that the meanings of the two verbs are the same, they are not directly synonymous: the definitions of "form" imply creation, as opposed to the definitions of "organize," which "impl[y] arranging so that the whole aggregate works as a unit with each element having a proper function[.]" *Id.* The use of these two different verbs in the same article of the Constitution means that the drafters of the provision drew a distinction between the Secretary of State's order *to form* a commission and the commission's responsibility to *organize* itself. In other words, "formation" of a commission is a precursor to its "organization."

Likewise, we find no merit to Pentico's argument that the plain reading of Idaho Code section 72-1508 means that the Commission is "organized" when the Secretary of State issues the order to form a commission. Like Article III, section 2(4) of the Constitution, Idaho Code section 72-1508 sets out a ninety-day time limit, stating that "[t]he final report of the commission shall be filed with the office of the secretary of state *not more than ninety (90) days after the commission has been organized.*" I.C. § 72-1508 (italics added). Idaho Code section 72-1501 provides:

(1) *A commission for reapportionment shall be organized, upon the order of the secretary of state*, in the event that:

(a) A court of competent jurisdiction orders a redistricting of an existing state legislative or congressional plan; or

(b) In a year ending in one (1), a new federal census is available, in which case an order shall be issued no earlier than June 1.

6

(2) A commission formed pursuant to paragraph (1)(b) of this section shall be reconvened if, prior to the next general election, a court of competent jurisdiction orders the plan adopted by that commission to be revised.

I.C. § 72-1501 (italics added).

Pentico asserts that "[t]he plain language of Idaho Code [section] 72-1501 is unambiguous in declaring that a commission for reapportionment is 'organized *upon the order of the secretary of state*[.]'" (Italics in original.) However, in making this argument, Pentico omits the comma between "organized" and "upon the order of the secretary of state . . . ." Whether Pentico's omission of the comma was intentional or inadvertent, the comma is important in interpreting the statute. In addition, Pentico's interpretation is contrary to Idaho's Constitution. Article III, section 2(2) of the Idaho Constitution states that "a commission for reapportionment shall *be formed* on order of the secretary of state." IDAHO CONST. art. III, § 2(2) (italics added). As discussed above, the Secretary of State's order does not form a commission; rather, it is an order *to form* a commission. Likewise, the Secretary of State's order does not automatically organize a commission simply upon the order's issuance. Additionally, Pentico takes the quoted language out of context. As Respondents point out, Idaho Code section 72-1501 "states *when* a [c]ommission must be organized: in a year ending in one after a new federal census is available[.]" (Italics in original.)

In order to determine when a commission is organized, we must look to Idaho Code section 72-1505. Pursuant to Article III, section 2(3) of the Idaho Constitution, the Legislature may "enact laws providing for the implementation of the provisions of" Article III, section 2. IDAHO CONST. art. III, § 2(3). The Legislature enacted Idaho Code section 72-1505, entitled "Organization and Procedure," which states that "[t]he commissioners shall elect, by majority vote, a member or members to serve as chairman or cochairmen and other officers as they may determine." I.C. § 72-1505. The statute then goes on to provide "[a]ll proceedings of the commission shall be governed by the following procedure:" and lists seven procedurally-related subsections but does not refer to organization. *Id.* Thus, the first part of section 72-1505, which refers to election of chairpersons, is the "organizational" part of the statute to which its title refers. As such, we conclude that the commission is only "organized" upon the election of its chair or co-chairs. This, in turn, means that the ninety-day deadline begins on the date the chairpersons are elected, or in this case September 1, 2021.

7

Pentico warns that, if we do not adhere to his reading of the ninety-day deadline, there is a possibility that a future commission will "delay[] and dither[] indefinitely, irretrievably gumming up Idaho's democratic process" by refusing to elect chairpersons. We agree that this opinion should not be read to give future commissions license to prolong their official duties; however, we decline to ignore the plain language of Article III, section 2 and Idaho Code section 72-1501. There is no reason to assume that a future commission will drag its feet. Indeed, this Commission worked exceptionally well under significant time pressure and, as we have previously observed, "[w]e have no reason to believe that the commission will not perform its duty to adopt a plan that complies with mandatory constitutional and statutory provisions." *Twin Falls Cnty. v. Idaho Comm'n on Redistricting*, 152 Idaho 346, 351, 271 P.3d 1202, 1207 (2012); *see also Horner v. Ponderosa Pine Lodging*, 107 Idaho 1111, 1114, 695 P.2d 1250, 1253 (1985) ("In Idaho, as in most states, there is a presumption of regularity in the performance of official duties by public officers.").

We hold that the Commission was organized on September 1, 2021, when the Commission elected two commissioners as co-chairs, pursuant to Idaho Code section 72-1505. Because the Commission was organized on September 1, 2021, the ninety-day deadline had not expired by the time the Final Report was filed on November 12, 2021. As such, we conclude the Final Report and Plan C03 were timely filed.

### B. Plan C03 does not violate Idaho Code section 72-1506(7).

Pentico next argues that Plan C03 violates Idaho Code section 72-1506(7) because it unnecessarily splits voting precincts. Idaho Code section 72-1506(7) provides:

> Congressional and legislative redistricting plans considered by the commission, and plans adopted by the commission, shall be governed by the following criteria:
>
> . . .
>
> (7) District boundaries shall retain the local voting precinct boundary lines to the extent those lines comply with the provisions of section 34-306, Idaho Code. When the commission determines, by an affirmative vote of at least five (5) members recorded in its minutes, that it cannot complete its duties for a legislative district by fully complying with the provisions of this subsection, this subsection shall not apply to the commission or legislative redistricting plan it shall adopt.

I.C. § 72-1506(7). The Commission unanimously voted that it could not complete its duties for its legislative redistricting plan and retain local precinct boundary lines. The Commission also voted, 5-1, that it could not complete its duties for its congressional reapportionment plan while retaining

8

local precinct boundary lines. Plan C03, ultimately adopted by the Commission, splits six precincts in Ada County.

1. Pursuant to Idaho Code section 72-1506(7), a commission need not retain local precinct boundary lines with respect to its congressional plan if it determines it cannot complete its duties for a legislative district while retaining precincts.

Pentico argues that "the Commission lacked the power to make such a determination with respect to congressional districts[.]" He points to the language of Idaho Code section 72-1506, asserting that "the statute clearly provides such a determination can only be made as to legislative districts." Pentico contends that public policy concerns support his interpretation.

Respondents counter that the plain language of Idaho Code section 72-1506(7) provides that "the prohibition on splitting precincts does not apply to the Commission's congressional redistricting plan once it votes to waive the precinct requirement for its legislative redistricting plan." Under Respondents' reading, the mandate to retain precinct boundary lines applied to both legislative and congressional redistricting plans until the Commission unanimously voted that it could not complete its duties for its legislative redistricting plan while retaining precinct boundary lines. After this vote, Respondents assert, the Commission was not required to retain the precinct boundary lines in either the congressional or legislative plans. Respondents note the Legislature's use of the disjunctive "or" in the phrase "the subsection shall not apply to the commission *or* [the] legislative redistricting plan it shall adopt." Respondents assert that this means "the commission" cannot be read to simply refer to "the legislative redistricting plan." Respondents additionally point to Idaho Code section 72-1506(7)'s inclusion of Idaho Code section 34-306, which specifically contemplates legislative districts, not congressional districts, and to the legislative history of Idaho Code section 72-1506(7), which they argue supports their interpretation.

In reply, Pentico reasserts that, under the plain language of Idaho Code section 72-1506(7), the Commission has no power to "exempt itself from the requirement to retain [precinct] boundary lines with respect to" congressional reapportionment. Pentico contends that "if the legislature intended to allow the finding vis-à-vis legislative redistricting to remove [the Idaho Code section] 72-1506(7) prohibition on splitting precincts in [congressional][1] redistricting, it could have simply

---

[1] Pentico's reply brief states that "if the legislature intended to allow the finding vis-à-vis legislative redistricting to remove [the Idaho Code section] 72-1506(7) prohibition on splitting precincts in *legislative* redistricting, it could have simply ended the statute with 'this subsection shall not apply to the commission.'" (Italics added.) However, this appears to be a mistake: to fit within Pentico's argument, the quote should say "if the legislature intended to allow the finding vis-à-vis legislative redistricting to remove [the Idaho Code section] 72-1506(7) prohibition on splitting

ended the statute with 'this subsection shall not apply to the commission[,]'" rather than adding the "or legislative redistricting plan" clause. Pentico asserts that, under Respondents' interpretation, the "or legislative redistricting plan" language is rendered superfluous.

Additionally, Pentico argues that the Legislature's use of the word "or" cannot mean that the commission and the legislative redistricting plan "are two different and unalike things" because "[t]he legislative redistricting plan is adopted by the commission; in effect, it is its creation." (Footnote omitted.) Pentico also asserts that public policy considerations support his interpretation. Pentico contends that the legislative history supports his interpretation rather than Respondents', and points to the 2009 amendment to Idaho Code section 72-1506(7) as support for his argument.

Turning to the statute in question, we hold that the Commission acted consistently with statutory criteria when it adopted a congressional reapportionment plan that split six precincts. We further conclude that the statute is unambiguous. Subsection 7 applies to "[c]ongressional and legislative redistricting plans considered by the commission, and plans adopted by the commission[.]" I.C. § 72-1506. Additionally, for both congressional and legislative redistricting plans, "[d]istrict boundaries shall retain the local voting precinct boundary lines to the extent those lines comply with the provisions of section 34-306, Idaho Code." I.C. § 72-1506(7). Usually, the word "shall" is mandatory. *Twin Falls Cnty.*, 152 Idaho at 349, 271 P.3d at 1205. However, it is also clear that section 72-1506(7) provides an escape clause, which becomes available if "the commission determines, by an affirmative vote of at least five (5) members recorded in its minutes, that it cannot complete its duties *for a legislative district* by fully complying with the provisions of this subsection[.]" I.C. § 72-1506(7) (italics added). This phrasing suggests, as Respondents argue, that in order to invoke the escape clause, the Commission need only vote that "it cannot complete its duties for a legislative district by fully complying with" the mandate to "retain the local voting precinct boundary lines." Nothing in the statute requires the Commission make a similar vote with respect to congressional districts. *See* I.C. § 72-1506(7).

The heart of the parties' disagreement is the escape clause language contained in section 72-1506(7). That section provides that if five members of a commission affirmatively vote that the commission cannot complete its duties by fully complying with subsection (7), then the subsection's requirements "shall not apply to the commission *or* legislative redistricting plan it

---

precincts in *congressional* redistricting, it could have simply ended the statute with 'this subsection shall not apply to the commission.'"

shall adopt." I.C. § 72-1506(7) (italics added). "The word 'or' is a 'disjunctive particle used to express an alternative or to give a choice of one among two or more things.'" *State v. Cota-Medina*, 163 Idaho 593, 600, 416 P.3d 965, 972 (2018) (quoting *Markel Int'l Ins. Co., Ltd v. Erekson*, 153 Idaho 107, 110, 279 P.3d 93, 96 (2012)). The Legislature's use of the word "or" therefore indicates that "the commission," as used in section 72-1506(7), must be read as something in addition to the "legislative redistricting plan."

Pentico offers no definition of "the commission;" instead, he simply asserts that it cannot be read to include the congressional reapportionment plan. Looking to the plain language of the statute, we conclude that "the commission" means exactly that: the commission. By extension, this includes any plans—either congressional or legislative, or both—the commission adopts. Accordingly, we determine the statute is not ambiguous. The only reasonable interpretation of the statute is that it gives the commission the authority to split voting precincts in both its congressional and legislative plans. Pentico argues that the statute does not give the commission the ability to split precincts in its congressional plan, while conceding it gives the commission the ability to do so in its legislative plan. Why would the legislature give the commission the ability to split precincts for one plan, but not the other? The simple answer is it would not make sense to do so.

Pursuant to Idaho Code section 34-301, the board of county commissioners for each county is tasked with establishing local voting precincts. I.C. § 34-301. Section 34-301, however, contemplates only legislative districts, not congressional districts:

> The board of county commissioners may establish an absentee voting precinct for each *legislative district* within the county. The boundaries of such absentee precincts shall be the same as those of the *legislative districts* for which they were established. The board shall have the authority to create new or consolidate established precincts only within the boundaries of *legislative districts*.

*Id.* (italics added). Likewise, Idaho Code section 34-306, expressly referenced by Idaho Code section 72-1506(7), only contemplates legislative districts, not congressional districts:

> (1) Precinct boundaries shall follow visible, easily recognizable physical features on the ground including, but not limited to, streets, railroad tracks, roads, streams and lakes. The exception shall be when a precinct boundary coincides with a city, county, Indian reservation or school district boundary which does not follow a visible feature.

> (2) In order to achieve compliance with the requirements of this section, and simultaneously maintain *legislative district boundaries* which may not follow visible features, a county may designate subprecincts within precincts, the internal boundaries of which do not follow visible features.

11

I.C. § 34-306 (italics added).

Contrary to Pentico's assertions, precinct boundaries are not required to be redrawn based on a congressional reapportionment plan, nor are the precincts required to follow the boundaries of congressional districts. *See* I.C. §§ 34-301, 34-306. It is, however, likely that precinct boundary lines will be redrawn following the adoption of a new legislative redistricting plan, and that those new precinct boundaries will adhere to the new legislative district boundaries. *See* I.C. §§ 34-301, 34-306. Thus, forcing the congressional reapportionment plan to follow precinct boundaries that exist at the time the commission is doing its work does not make sense when, as here, the Commission determined it could not complete its duties with respect to the legislative redistricting plan while retaining those soon-to-be-outdated precinct boundaries.

Because we conclude the statute is not ambiguous, we need not resort to an analysis of the legislative history or policy arguments to determine the meaning behind the statute. However, we do note that the legislative history of Idaho Code section 72-1506(7) supports Respondents' interpretation rather than Pentico's interpretation. Statutory amendments are highly relevant to statutory interpretation. *Saint Alphonsus Reg'l Med. Ctr. v. Raney*, 163 Idaho 342, 345–47, 413 P.3d 742, 745–47 (2018). Prior to the 2009 amendment, which codified Idaho Code section 72-1506(7) as it exists today, section 72-1506(7) provided in full: "District boundaries should retain, as far as practicable, the local voting precinct boundary lines to the extent those lines comply with the provisions of section 34-306, Idaho Code." Act of Mar. 12, 1996, ch. 175, 1996 Idaho Sess. Laws 564. Idaho Code 72-1506(7) now states:

> District boundaries shall retain the local voting precinct boundary lines to the extent those lines comply with the provisions of section 34-306, Idaho Code. When the commission determines, by an affirmative vote of at least five (5) members recorded in its minutes, that it cannot complete its duties for a legislative district by fully complying with the provisions of this subsection, this subsection shall not apply to the commission or legislative redistricting plan it shall adopt.

I.C. § 72-1506(7). The Statement of Purpose behind the 2009 amendment provided that:

> *This legislation focuses on the redistricting process to protect and preserve communities of interest in the following ways:* 1. Counties shall not be divided whenever possible; 2. Counties or portions of a county in a district shall be directly connected by roads and highways to establish communities of interest; 3. District boundaries and *local voting precincts shall remain intact as much as possible.*

(Italics added.) Notably, the Statement of Purpose only discusses the redistricting process in general; it does not specifically address the distinction between the legislative redistricting process

and the congressional reapportionment process, both of which are governed by Idaho Code section 72-1506. *See* I.C. § 72-1506. Additionally, the original wording of section 72-1506(7) made no delineation between the legislative or congressional plans; it is therefore unlikely that the Legislature intended the amendment to change that, especially given the broad sweep of the phrase "the commission or legislative redistricting plan it shall adopt."

Further, a review of the April 1, 2009, and April 10, 2009, Senate State Affairs Committee meeting minutes, as well as the April 16, 2009, House State Affairs Committee meeting minutes, does not support Pentico's interpretation that the Legislature purposely omitted the congressional reapportionment plan from the 2009 amendment. Rather, the focus of the amendment appears to be keeping communities of interest whole throughout the redistricting process in general, not drawing a distinction between legislative and congressional plans.

Additionally, the April 1, 2009, Senate State Affairs Committee meeting minutes reflect that

> **Senator Kelly** asked if the language change from should to shall is grammatical? **Senator Geddes** answered it seems to him that it is a contradiction of terms because we say that they shall to the extent possible. Shall does not have the weight that it normally means in most legislation. *This puts more emphasis in the division of counties and precincts and still allows the Commission to deviate from that, in order to comply with the other provisions in redistricting.* **Senator Kelly** asked if there is a reason to believe that part of these changes will be declared invalid or unconstitutional because of the severability clause? **Senator Geddes** replied "no", *the severability clause is part of the original legislation.*

*Meeting on RS18744C2 Before the S. State Affairs Comm.*, 60th Leg. 6 (April 1, 2009) (bolded emphasis in original, italics added). This supports the interpretation that the 2009 amendment was not intended to remove congressional reapportionment from the escape clause in section 72-1506(7).

Additionally, we decline to consider Pentico's public policy argument because he did not adequately raise it in his opening brief.

> For this Court to consider an issue, the appellant must identify legal issues and provide authorities supporting the arguments in its opening brief. I.A.R. 35. "A reviewing court looks only to the initial brief on appeal for the issues presented because those are the arguments and authority to which the respondent has an opportunity to respond in the respondent's brief."

*Munden v. Bannock Cnty.*, No. 47978, 2022 WL 386057, at *14 (Idaho Feb. 9, 2022) (quoting *H.F.L.P., LLC v. City of Twin Falls*, 157 Idaho 672, 684, 339 P.3d 557, 569 (2014)).

13

In Pentico's opening brief, the extent of his public policy argument is the following: "Given the huge difference between the size of Idaho['s] legislative and congressional districts, it is not difficult to imagine policy reasons behind allowing the Commission leeway to split voting precincts in drawing the former but not the latter." However easy these policy reasons may be for Pentico to imagine, he left such imagining to the Court and did not actually identify *any* public policy reasons until he filed his reply brief, which deprived the Respondents of their ability to respond. *See Suitts v. Nix*, 141 Idaho 706, 708, 117 P.3d 120, 122 (2005) ("A reviewing court looks only to the initial brief on appeal for the issues presented because those are the arguments and authority to which the respondent has an opportunity to respond in the respondent's brief.").

Even if we were to consider Pentico's purported policy arguments, they are without merit. Notably, Pentico asserts in his reply brief that "[s]plitting precincts is inherently disruptive to the electoral process, as it requires county commissioners to redraw precincts and county clerks to canvass them, both of which impose costs and delays." However, Pentico appears to concede this will happen anyway: in arguing that the Commission filed its Final Report too late, Pentico writes, "[o]bviously, any delay in the redistricting process can have disastrous downstream effects: county commissions must wait [to] redraw new precinct boundaries [and] county clerks must wait to canvass new precincts[.]" Pentico effectively concedes that legislative redistricting will likely lead counties to redraw precinct boundaries. Additionally, as discussed above, precincts—if they are redrawn—must be redrawn to conform with legislative districts, not congressional districts. Consequently, we do not find his policy arguments for requiring the Commission to retain the precinct boundaries in its congressional redistricting plan to be persuasive.

In sum, we hold that, when properly invoked by a commission, the escape clause in Idaho Code section 72-1506(7) applies to both the legislative plan and the congressional plan adopted by that commission.

2. Pursuant to Idaho Code section 72-1506(7), the Commission was within its power to disregard existing local precinct boundaries in adopting Plan C03.

Finally, Pentico argues that, even if the Commission had the power to determine it could not retain local precinct boundary lines and still draw a legal plan, this determination was factually erroneous because Plan C039, a plan Pentico drew and submitted to the Commission, had a "*zero-person* population deviation" and split no precincts. (Italics in original.)

Respondents contend that "[t]he Commission's determination that it could not complete its duties without splitting precincts was factually correct." Respondents note that Pentico has not

14

challenged the correctness of the Commission's determination with respect to the legislative plan, which is the vote that matters under Respondents' reading of Idaho Code section 72-1506(7). Respondents additionally argue that Plan C039, though it does not split precincts, "does not satisfy all applicable constitutional and statutory criteria" because it has an oddly-shaped district and divides more communities of interest than Plan C03.

In reply, Pentico maintains that the Commission could have completed its duties while still retaining precinct boundary lines, as evidenced by his proposed plan, Plan C039. He further argues that the districts in Plan C03 are just as "oddly shaped" as the districts in Plan C039.

We hold that, under the arguments presented to us, the Commission was within its power to determine it was unable to complete its duties and retain precinct boundary lines. As discussed above, the vote that matters is the Commission's vote that determined it could not complete its duties with respect to the *legislative* redistricting plan while retaining existing precinct boundary lines. Pentico has only argued that the Commission's determination it could not complete its duties while retaining precinct boundary lines was factually erroneous with respect to the congressional plan. He has not put forth any argument that the Commission could have retained precinct boundary lines with respect to the legislative redistricting plan. Because he has not challenged the vote that matters, his argument necessarily fails. Accordingly, we need not address whether the Commission's determination it could not complete its duties in drawing new legislative districts while retaining existing precinct boundary lines was factually supported. *See Munden*, No. 47978, 2022 WL 386057, at *14 ("For this Court to consider an issue, the appellant must identify legal issues and provide authorities supporting the arguments in its opening brief.").

Therefore, for the reasons stated, we hold Pentico has failed to establish Plan C03 violates Idaho Code section 72-1506(7).

### C. Pentico is not entitled to attorney fees on appeal.

Pentico seeks attorney fees and costs on appeal pursuant to Idaho Code sections 12-117 and 12-121. Idaho Code section 12-117 provides:

> Unless otherwise provided by statute, in any proceeding involving as adverse parties a state agency or a political subdivision and a person, the state agency, political subdivision or the court hearing the proceeding, including on appeal, shall award the prevailing party reasonable attorney's fees, witness fees and other reasonable expenses, if it finds that the nonprevailing party acted without a reasonable basis in fact or law.

I.C. § 12-117(1). Idaho Code section 12-121 provides:

15

In any civil action, the judge may award reasonable attorney's fees to the prevailing party or parties when the judge finds that the case was brought, pursued or defended frivolously, unreasonably or without foundation. This section shall not alter, repeal or amend any statute that otherwise provides for the award of attorney's fees. The term "party" or "parties" is defined to include any person, partnership, corporation, association, private organization, the state of Idaho or political subdivision thereof.

I.C. § 12-121.

We have recently stated that, when a party seeks attorney fees pursuant to both section 12-117 and 12-121, "Idaho Code section 12-117 is the *exclusive basis* for awarding attorney's fees in a matter with a person and a governmental entity as adverse parties." *Citizens Against Linscott/Interstate Asphalt Plant v. Bonner Cnty. Bd. of Commissioners*, 168 Idaho 705, 721, 486 P.3d 515, 531 (2021) (italics added). However, this Court has also held that "section 12–117(1) is not the exclusive basis upon which to seek an award of attorney fees against a state agency or political subdivision, but attorney fees may be awarded under any other statute that expressly applies to a state agency or political subdivision, such as sections 12–120(3) and 12–121." *Sanders v. Bd. of Trustees of Mountain Home Sch. Dist. No. 193*, 156 Idaho 269, 272, 322 P.3d 1002, 1005 (2014).

We take this opportunity to clarify the confusion surrounding attorney fees that may be awarded against a governmental party. We agree with the reasoning in *Sanders* and interpret the phrase "unless otherwise provided by statute" in Idaho Code section 12-117 to mean "if another statute expressly provides for the awarding of attorney fees against a state agency or a political subdivision, attorney fees can be awarded under that statute also." *Sanders*, 156 Idaho at 272, 322 P.3d at 1005 (quoting *Syringa Networks, LLC v. Idaho Dep't of Admin.*, 155 Idaho 55, 67, 305 P.3d 499, 511 (2013)). Idaho Code section 12-121 provides that the prevailing party may be awarded attorney fees if the case was brought, pursued, or defendant frivolously, unreasonably, or without foundation[,]" defining party to include "the State of Idaho or political subdivision thereof." I.C. § 12-121. Accordingly, if warranted under the statutes, Pentico could collect attorney fees under either Idaho Code section 12-117(1) or section 12-121.

However, as set forth in both Idaho Code section 12-117(1) and section 12-121, in order to be eligible for an award of attorney fees, the party seeking attorney fees must have prevailed in the case. Because Pentico is not the prevailing party, he is not entitled to attorney fees under either statute.

16

## IV. CONCLUSION

For the reasons discussed, we deny Pentico's request to issue a writ of prohibition prohibiting the Secretary of State from transmitting the Commission's final congressional reapportionment plan, C03, to the President Pro Tempore of the Senate and the Speaker of the House of Representatives. We also deny Pentico's request for attorney fees. We award costs to Respondents as allowed by Idaho Appellate Rule 40.

Chief Justice BEVAN, Justices BRODY, MOELLER and ZAHN CONCUR.