# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 51211-2023

IDAHO STATE ATHLETIC COMMISSION, )
acting by and through Lewis N. Stoddard, in )
his official capacity as Commissioner, and )   Boise, December 2023 Term
IDAHO DIVISION OF OCCUPATIONAL )
AND PROFESSIONAL LICENSES, acting by )   Opinion filed: January 29, 2024
and through Russell Barron, in his official )
capacity as Administrator, )   Melanie Gagnepain, Clerk
)
   Petitioners, )
)
v. )
)
OFFICE OF THE ADMINISTRATIVE )
RULES COORDINATOR, and BRAD HUNT )
in his official capacity as Rules Coordinator, )
)
   Respondents, )
)
and )
)
IDAHO STATE LEGISLATURE, )
)
   Intervenor-Respondent. )
)

Original proceeding in the Idaho Supreme Court seeking a declaration of unconstitutionality and a writ of mandamus.

Petitioners' Verified Petition for a declaration of unconstitutionality is <u>dismissed</u>. Petitioners' Verified Petition for a writ of mandamus is <u>denied</u>.

Elam & Burke, P.A., Boise, for Petitioners. Jeffrey A. Thomson argued.

Naylor & Hales, P.C., Boise, for Respondents. Joan E. Callahan argued.

Smith + Malek, PLLC, Boise, for Intervenor. Kolby K. Reddish argued.

---

1

ZAHN, Justice.

Petitioners, the Idaho State Athletic Commission and the Idaho Division of Occupational and Professional Licenses, filed this original proceeding after the Office of the Administrative Rules Coordinator refused to publish the Athletic Commission's administrative rules in the Idaho Administrative Code. The Administrative Rules Coordinator, Brad Hunt, advised the Athletic Commission that he was not legally authorized to publish the rules because the legislature had not approved the Athletic Commission's pending administrative fee rules prior to the conclusion of the 2023 legislative session. Therefore, the pending rules expired pursuant to Idaho Code section 67-5224(5)(c) (2020).

In this original action, Petitioners seek a declaratory ruling that those provisions of the Idaho Administrative Procedure Act ("APA") requiring legislative approval of pending administrative fee rules, including the recent changes to the APA made by House Bill 206 (2023), violate the Idaho Constitution. Petitioners also seek a Writ of Mandamus directing Respondents, Hunt and the Office of the Administrative Rules Coordinator, to publish the Athletic Commission's 2022 administrative rules in the Idaho Administrative Code.

We deny the Petition for a declaration of unconstitutionality because this Court may not grant declaratory relief in an original action when the declaratory relief is not necessary to decide the question of whether an extraordinary writ should issue.

We do, however, have original jurisdiction concerning that portion of the Petition seeking a writ of mandamus. We also have jurisdiction to determine whether Idaho Code section 67-5224(5)(c) (2020) violates the Idaho Constitution because that determination is necessary before we can determine whether the requested writ of mandamus should issue. For the reasons discussed below, we conclude that the statute is constitutional and as a result, Petitioners have failed to demonstrate that a writ of mandamus should issue. We, therefore, dismiss the Petition for a declaration of unconstitutionality and deny the Petition for a Writ of Mandamus.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

The Idaho State Athletic Commission is established within the Idaho Division of Occupational and Professional Licenses ("DOPL") (referred to collectively as "Petitioners"). I.C. § 54-401. DOPL is a division within the Idaho Department of Self-Governing Agencies, which is an executive department of state government. I.C. § 67-2601(1), (2)(h). As such, both the Athletic Commission and DOPL are executive branch agencies.

2

The Athletic Commission has the duty to direct, supervise, and control all boxing and wrestling contests and exhibitions within the state of Idaho. I.C. § 54-406(1). The Idaho Legislature has directed the Athletic Commission to contract with DOPL to act as its agent and employ such individuals as necessary to provide the Athletic Commission with the administrative, investigative, legal, and fiscal services to administer the provisions of its enabling act. I.C. § 54-403(1).

This original action concerns administrative rulemaking during the 2023 legislative session and changes to that process resulting from House Bill 206 (2023). The APA sets forth the procedure for executive agencies to promulgate administrative rules with the force of law. *Mead v. Arnell*, 117 Idaho 660, 666, 791 P.2d 410, 416 (1990). The APA identifies two types of administrative rules: fee rules and non-fee rules. A fee rule is one that imposes a fee or cost on the public. *See* I.C. § 67-5201(17). A non-fee rule is any rule that does not impose a cost or fee on the public. *See* I.C. § 67-5201(18).

The APA rulemaking process applies to both new rules and amendments to existing rules. An executive agency begins the rulemaking process by publishing a notice of intent to promulgate a rule in the Idaho Administrative Bulletin. I.C. § 67-5220(1). The Administrative Bulletin is published electronically at least once a month by the Office of the Administrative Rules Coordinator and includes notices of intent to promulgate rules, notices of proposed rules, the text of proposed and pending rules, and any other agency documents required to be published in the bulletin by law. I.C. § 67-5203. Following publication of the notice of intent, the agency engages in either negotiated or informal rulemaking. I.C. § 67-5220. The agency then publishes the "proposed rule" in the Administrative Bulletin. I.C. § 67-5221. "Proposed rules" do not have the effect of law. *See* I.C. § 67-5201(21). After publishing the proposed rules, the agency must then provide at least twenty-one days for the public to submit comments to the agency concerning the rules. I.C. § 67-5222(1).

After the public comment period closes, the agency considers all submissions concerning the rules. I.C. § 67-5224. It then publishes the text of the proposed rules and a notice of adoption of the proposed rules in the Administrative Bulletin. *Id*. At this point, the proposed rules have been adopted by the agency and are considered "pending rules," but still do not have the force and effect of law and are subject to legislative review during the next legislative session. *Id.*; I.C. § 67-5291.

3

Since 1969, the APA has provided for legislative review of all pending administrative rules. 1969 Idaho Sess. Laws 125–26 (codified at I.C. § 67-5218, redesignated as I.C. § 67-5291 (1993)); I.C. § 67-5291 (2023). In 2016, Idaho voters approved a constitutional amendment that enshrined legislative review of administrative rules in the Idaho Constitution. H.J.R. No. 5 § 1, 63d Leg., 2d Reg. Sess., 2016 Idaho Sess. Laws 1107–08 (ratified Nov. 8, 2016); Idaho Const. art. III, § 29.

During the 2023 legislative session, any pending <u>non-fee</u> rules that were neither rejected nor approved by a concurrent resolution of the legislature during the legislative session automatically became final rules when the legislature adjourned *sine die*. I.C. § 67-5291 (2020). Final rules have the force and effect of law and are published in the Idaho Administrative Code by the Administrative Rules Coordinator. I.C. §§ 67-5201(11), 67-5204. In contrast, any pending <u>fee</u> rules that were not approved prior to *sine die* expired and had no legal effect. I.C. § 67-5224(5)(c) (2020).

That changed when, in 2023, the legislature passed House Bill 206. The bill made several changes to the APA provisions concerning legislative review of administrative rules. H.B. 206aasaas, 67th Leg., 1st Reg. Sess., 2023 Idaho Sess. Laws 956–66. Effective July 1, 2023, all pending rules, <u>both fee and non-fee</u>, expire if the legislature does not accept or reject them through a concurrent resolution. I.C. §§ 67-5224(2)(c), 67-5291(5) (2023). Petitioners refer to the statutory requirement that the legislature approve pending administrative rules before they become final as the "legislative pre-approval process."

During the 2023 legislative session, the APA also provided that all existing final rules in the Idaho Administrative Code must be reauthorized in a bill every year prior to the end of the legislative session. I.C. § 67-5292 (2020). This bill was colloquially referred to as the "going home bill." In the event the legislature failed to pass a bill reauthorizing the Idaho Administrative Code, all existing final rules expired and had no legal effect. *Id.* House Bill 206 amended section 67-5292 to provide that the Idaho Administrative Code "shall be reviewed by the legislature on a staggered, periodic schedule between July 1, 2026, and June 30, 2034, and on a similar schedule each eight (8) years thereafter." 2023 Idaho Sess. Laws at 963 (codified at I.C. § 67-5292 (2023)).

In addition to providing a process for promulgating final administrative rules, the APA also provides a process to promulgate "temporary rules." I.C. § 67-5226. A temporary rule is legally effective and enforceable immediately upon adoption by the agency, without preapproval by the legislature. I.C. §§ 67-5201(29), 67-5226(1). A temporary non-fee rule can be adopted only if "the

governor finds that: (a) [p]rotection of the public health, safety, or welfare; or (b) [c]ompliance with deadlines in amendments to governing law or federal programs; or (c) [c]onferring a benefit; requires a rule to become effective before it has been submitted [to the legislature] for review[.]" I.C. § 67-5226(1). A temporary fee rule can be adopted by the agency "only if the governor finds that the fee or charge is necessary to avoid immediate danger." I.C. § 67-5226(2). A temporary rule must be published in the next issue of the Administrative Bulletin after its adoption by an agency. I.C. § 67-5226(3).

Concurrently with the promulgation of the temporary rule, the agency is required to begin the standard rulemaking procedure under the APA, unless the temporary rule would expire before the proposed rule could become final. I.C. § 67-5226(5). Temporary rules are subject to legislative review during the next legislative session that follows their adoption. I.C. § 67-5291. All temporary rules expire at the end of the next legislative session following their adoption unless extended by concurrent resolution. *Id*. House Bill 206 did not change the governor's ability to authorize the issuance of temporary rules.

The governor has regularly exercised his authority to authorize temporary rules. Notably, in 2019, 2020, 2021, and 2022, the legislature failed to pass the "going home bill" to extend the final rules contained in the Idaho Administrative Code. In each instance, agencies whose rules had expired sought authority to promulgate temporary rules. In response, Governor Little authorized the issuance of temporary rules pursuant to Idaho Code section 67-5226.

We now turn to the specific events that give rise to this original action. Following the legislature's failure to pass a "going home bill" at the conclusion of the 2022 legislative session, and following the necessary findings by Governor Little, the Athletic Commission promulgated temporary rules and made those rules immediately effective. On December 7, 2022, the Athletic Commission's temporary rules were published in the Idaho Administrative Bulletin and submitted to the legislature as proposed rules (hereinafter referred to as the "2022 Rules"), for legislative approval during the 2023 legislative session. The rules were then considered pending rules. The Athletic Commission submitted its proposed non-fee and fee rules in a single rules docket. Neither the Idaho House of Representatives, nor the Senate, held a hearing to consider the Athletic Commission's 2022 Rules during the 2023 legislative session. On April 6, 2023, the legislature adjourned *sine die* without having approved the 2022 Rules. Because the Athletic Commission

submitted its non-fee and fee rules together as one rulemaking docket, the legislature's failure to approve the fee rules meant all of the Athletic Commission's 2022 Rules expired.

Following the expiration of its 2022 Rules, the Athletic Commission did not request that the governor authorize the issuance of temporary rules pursuant to Idaho Code section 67-5226. Instead, on September 15, 2023, DOPL's general counsel sent a letter to the Rules Coordinator to request that he publish the Athletic Commission's 2022 Rules in the Idaho Administrative Code. The Rules Coordinator responded that he was bound by statute and was unable to publish the Athletic Commission's rules because the legislature adjourned *sine die* in 2023 without approving the 2022 Rules. In response, Petitioners filed this original action in this Court seeking a declaration that the legislative preapproval provisions of the APA are unconstitutional and also seeking a writ of mandamus requiring the Rules Coordinator to publish the Athletic Commission's 2022 Rules. The Petition named Brad Hunt, the Administrative Rules Coordinator, and the Office of the Administrative Rules Coordinator, as Respondents. Respondents are responsible for publishing all final rules in the Idaho Administrative Code. *See* I.C. § 67-5204. The Idaho Legislature subsequently filed a petition to intervene, which this Court granted.

## II.     ISSUES PRESENTED

1.  Whether Petitioners properly invoked this Court's original jurisdiction.
2.  Whether Petitioners have standing to bring this action.
3.  Whether Petitioners are entitled to a writ of mandamus.

## III.     ANALYSIS

**A. Petitioners have properly invoked this Court's original jurisdiction concerning their request for the issuance of a writ of mandamus, which requires us to determine the constitutionality of Idaho Code section 67-5224; but this Court does not have original jurisdiction to consider their request for a declaratory ruling concerning other APA provisions.**

We must initially determine whether Petitioners have properly invoked this Court's original jurisdiction. *See Reclaim Idaho v. Denney*, 169 Idaho 406, 417–18, 497 P.3d 160, 171–72 (2021). Petitioners filed this original action seeking two forms of relief: (1) a declaratory judgment that the legislative preapproval provisions of the APA, as they existed both before and after the effective date of House Bill 206, are unconstitutional; and (2) a writ of mandamus compelling Respondents to publish the Athletic Commission's 2022 Rules in the Idaho Administrative Code.

"The Supreme Court shall . . . have original jurisdiction to issue writs of mandamus, certiorari, prohibition, and habeas corpus, and all writs necessary or proper to the complete

6

exercise of its appellate jurisdiction." Idaho Const. art. V, § 9. "This original jurisdiction is limited only by the separation of powers provisions contained in Article II, [s]ection 1 of the Idaho Constitution and this Court's own rules." *Ybarra v. Legislature by Bedke*, 166 Idaho 902, 906, 466 P.3d 421, 425 (2020) (citing *Mead v. Arnell*, 117 Idaho 660, 663, 791 P.2d 410, 413 (1990)). "Once this Court asserts its original jurisdiction, 'it may issue writs of mandamus and/or prohibition.'" *Id.* (quoting *Mead*, 117 Idaho at 663–64, 791 P.2d at 413–14). "This Court has repeatedly held that mandamus is not a writ of right and the allowance or refusal to issue a writ of mandate is discretionary." *Coeur d'Alene Tribe v. Denney*, 161 Idaho 508, 512, 387 P.3d 761, 765 (2015) (citations omitted).

None of the parties in this action argue that this Court lacks original jurisdiction to grant Petitioners' request for a declaration of unconstitutionality. However, "[e]ven if jurisdictional questions are not raised by the parties, we are obligated to address them, when applicable, on our own initiative." *State v. Kavajecz*, 139 Idaho 482, 483, 80 P.3d 1083, 1084 (2003) (citation omitted). Over the years, this Court has taken differing positions concerning whether our original jurisdiction includes claims brought pursuant to the Declaratory Judgment Act, an act passed by the Idaho Legislature subsequent to the adoption of our constitution. *Compare Mead*, 117 Idaho at 663, 791 P.2d at 413 ("Even though legislative authorization is not necessary, [Idaho Code section] 10-1201 authorizes this Court to issue declaratory judgments in appropriate situations."), *with Neil v. Pub. Utilities Comm'n of Idaho*, 32 Idaho 44, 52, 178 P. 271, 273 (1919) (1-1-1 decision) ("The jurisdiction of this court is fixed by the Constitution and cannot be broadened or extended by the legislature."). The language of Idaho's Declaratory Judgment Act purports to apply to all of Idaho's courts: "Courts of record within their respective jurisdictions shall have power to declare rights, status, and other legal relations, whether or not further relief is or could be claimed." I.C. § 10-1201.

Our decision in *Mead* concluded that, while legislative authorization was unnecessary, the Declaratory Judgment Act authorized this Court to consider declaratory judgment claims in appropriate situations. *Mead*, 117 Idaho at 663, 791 P.2d at 413. That case involved an original action for "writs of mandate, prohibition and a declaratory judgment in mandamus[.]" *Id.* In evaluating this Court's jurisdiction to consider the claims raised, we first acknowledged the grant of original jurisdiction contained in Article V, section 9 of the Idaho Constitution. *Id.* We then acknowledged that neither the legislature nor the executive can regulate or alter this Court's

original jurisdiction. *Id.* Despite these observations, however, we then concluded that the Declaratory Judgment Act authorized this Court to award declaratory relief in an original action. *See id.*

Contrasted with our statements in *Mead* is our much earlier decision in *Neil*, where we held that Article V, section 9 of the Idaho Constitution limits this Court's original jurisdiction to the issuance of the writs enumerated therein. *See Neil*, 32 Idaho 44, 178 P. 271; *Stein v. Morrison*, 9 Idaho 426, 75 P. 246 (1904). Because the scope of our original jurisdiction is set by the Idaho Constitution, we have consistently rejected as unconstitutional legislative attempts to expand this Court's original jurisdiction. *See Regan v. Denney*, 165 Idaho 15, 20, 437 P.3d 15, 20 (2019) ("[S]ection 34-1809(4) unconstitutionally attempts to broaden this Court's jurisdiction."); *In re Pet. of Idaho State Fed'n of Lab. (AFL)*, 75 Idaho 367, 374, 272 P.2d 707, 711 (1954) ("The portion of [s]ection 34-1809, [Idaho Code], purportedly requiring this Court, itself, to prepare a short title or ballot title if that submitted by the Attorney General is incorrect, is beyond our power under the writ of certiorari or review."); *Neil*, 32 Idaho at 58, 178 P. at 273 ("Because of the limitations placed upon its jurisdiction by the Constitution the Supreme Court cannot issue the writ mentioned in Sess. Laws 1913, c. 61, § 63a."). Our decision in *Mead* did not address, distinguish, or overrule these precedents.

We take this opportunity to reaffirm our prior holdings that Article V, section 9 of the Idaho Constitution limits this Court's original jurisdiction to the issuance of the writs enumerated therein. To the extent *Mead* holds otherwise, we overrule that part of the decision. We hold that the Idaho Constitution grants this Court original jurisdiction to issue the writs enumerated in Article V, section 9 and only grants this Court original jurisdiction to issue a declaration of law when necessary to adjudicate a claim for one of the enumerated writs.

Petitioners allege that their 2022 Rules should have been deemed to be final rules because the legislative preapproval provisions of the APA are unconstitutional. Petitioners also contend that Respondents have a clear legal duty to publish all administrative final rules in the Idaho Administrative Code and that Respondents' duty is ministerial or executive in nature. Petitioners assert that this original action is necessary to protect their ability to execute their statutory duties, which they cannot do in the absence of final rules. Petitioners further argue that the constitutionality of the APA's legislative preapproval provisions is a matter of statewide

importance; that they are without a plain, speedy, and adequate alternative remedy; and that this issue needs to be addressed before the next (now current) legislative session.

Respondents agree that Petitioners have properly invoked this Court's original jurisdiction and ask us to provide guidance on whether the legislature can condition the legal effectiveness of an agency's pending administrative rules on the legislature's approval of the rules via a concurrent resolution.

Intervenor, the Idaho Legislature, argues that Petitioners cannot invoke this Court's original jurisdiction because they have a plain, speedy, and adequate alternative remedy available—the ability to promulgate temporary rules that have the force and effect of law.

In assessing the parties' arguments, we must first determine whether a declaration concerning the constitutionality of the APA's "legislative pre-approval provisions" is necessary to decide Petitioners' claim for a writ of mandamus. Notably, Petitioners do not identify in their Petition which APA provisions the Rules Coordinator relied on when he declined to publish the 2022 Rules in the Idaho Administrative Code. However, attached to the Petition is the September 15, 2023, letter that DOPL's general counsel sent to Respondents, demanding that Respondents publish the Athletic Commission's 2022 Rules. In that letter, DOPL's counsel asserted that the failure to publish was likely premised on Idaho Code section 67-5224(5)(c) (2020).[1] The Rules Coordinator's written response to that letter is also attached to the Petition. In it, the Rules Coordinator does not deny that section 67-5224(5)(c) is the operative provision, and further states that "because the [Athletic Commission's] rules were not approved via concurrent resolution my office is bound by statute and thus unable to publish your rule chapter as final." The Rules Coordinator's statement tracks with the requirements of section 67-5224(5)(c):

> Except as set forth in sections 67-5226 and 67-5228, Idaho Code, no pending rule or portion thereof imposing a fee or charge of any kind shall become final and effective until it has been approved by concurrent resolution.

I.C. § 67-5224(5)(c). None of the parties assert that the exceptions referenced in this provision (Idaho Code section 67-5226 (2020) or Idaho Code section 67-5228 (2020)) applied to the Athletic Commission's 2022 Rules.

We hold that, if Petitioners have otherwise satisfied the requirements for invoking mandamus relief, their allegations require us to determine the constitutionality of Idaho Code

---

[1] All subsequent references in this opinion to Idaho Code section 67-5224(5)(c) are to the version published in 2020, which was the operative version during the 2023 legislative session.

section 67-5224(5)(c) before we can determine whether they are entitled to the issuance of a writ of mandamus. We therefore must address the constitutionality of section 67-5224(5)(c) before we can determine whether the Rules Coordinator had a clear legal duty to publish the Athletic Commission's 2022 Rules. It appears that the only provision of the APA that prevented the Athletic Commission's 2022 Rules from becoming legally effective was section 67-5224(5)(c). To the extent Petitioners seek a declaration concerning the constitutionality of other APA provisions, including those encompassed by House Bill 206, such a declaration is not necessary to resolve their writ claim, and we therefore lack jurisdiction to issue a declaration regarding their constitutionality.

We now turn to whether Petitioners have properly invoked mandamus relief. A writ of mandamus "may be issued by the [S]upreme [C]ourt . . . to compel the performance of an act which the law especially enjoins as a duty resulting from an office, trust or station[.]" I.C. § 7-302. A writ of "mandamus 'will lie if the officer against whom the writ is brought has a "clear legal duty" to perform the desired act, and if the act sought to be compelled is ministerial or executive in nature.'" *Coeur d'Alene Tribe*, 161 Idaho at 512, 387 P.3d at 765 (alteration omitted) (quoting *Utah Power & Light Co. v. Campbell*, 108 Idaho 950, 953, 703 P.2d 714, 717 (1985)). "It is only appropriate for a court to issue an extraordinary writ 'where there is not a plain, speedy and adequate remedy in the ordinary course of law.'" *Westover v. Cundick*, 161 Idaho 933, 936, 393 P.3d 593, 596 (2017) (quoting I.C. §§ 7-303, 7-402).

The Athletic Commission has established that it is currently without administrative rules. Petitioners argue that resolution of the issue raised here will inform the Athletic Commission's approach to rulemaking during the next (now current) legislative session. They allege that if Idaho Code section 67-5224(5)(c) is unconstitutional, then the Rules Coordinator had a clear legal duty to publish the Athletic Commission's 2022 Rules in the Idaho Administrative Code. Taken together, Petitioners' allegations are sufficient to invoke our original jurisdiction to seek the issuance of a writ of mandamus.

We are unpersuaded by the Legislature's argument that temporary rulemaking is a plain, speedy, and adequate alternative remedy. While the Legislature is correct that temporary rulemaking is a workaround that would allow Petitioners to adopt temporary rules that have the force and effect of law, temporary rulemaking does not remedy the claimed constitutional violation—that the APA's requirement that the legislature approve pending fee rules before they

10

can become legally effective is unconstitutional. Even if the Athletic Commission promulgated temporary rules and made them effective until the next legislative session, the alleged constitutional violations would continue to occur each time the Athletic Commission submitted pending rules to the legislature. Because temporary rulemaking is a workaround rather than a remedy for the alleged constitutional violations, it does not constitute a plain, speedy, and adequate alternative remedy.

## B. Petitioners have standing to bring this action.

The Legislature next argues that Petitioners do not have standing because they cannot demonstrate a fairly traceable, causal connection between the alleged constitutional violation and Petitioners' injury. The Legislature contends that the Athletic Commission's alleged injury is the result of the Athletic Commission's own failure to promulgate temporary rules rather than the legislative preapproval provisions of the APA.

"Concepts of justiciability, including standing, identify appropriate or suitable occasions for adjudication by a court." *Idahoans for Open Primaries v. Labrador*, 172 Idaho 466, 476, 533 P.3d 1262, 1272 (2023) (quoting *Coeur d'Alene Tribe*, 161 Idaho at 513, 387 P.3d at 766). "Standing focuses directly on whether a particular interest or injury is adequate to invoke the protection of judicial decision." *Coeur d'Alene Tribe*, 161 Idaho at 513, 387 P.3d at 766 (citation omitted). To demonstrate standing, "the plaintiff must show (1) an injury in fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision." *Zeyen v. Pocatello/Chubbuck Sch. Dist. No. 25*, 165 Idaho 690, 698, 451 P.3d 25, 33 (2019) (citation omitted).

The Athletic Commission and DOPL assert that they have each been injured by Respondents' failure to publish the Athletic Commission's administrative rules in the Idaho Administrative Code. Without legally enforceable rules, Petitioners allege that they cannot execute their shared duties to regulate amateur and professional athletic contests in Idaho. DOPL also alleges that it has been separately injured because the legislative preapproval provisions have caused it to incur unnecessary expenses related to promulgating temporary rules. Assessing whether the Petitioners have established standing requires an evaluation of their respective roles, duties, and obligations related to promulgating administrative rules.

The Athletic Commission has a duty "to direct, supervise and control all amateur and professional contests and exhibitions within the state[.]" I.C. § 54-406(1). To fulfill this statutory

11

obligation, the Athletic Commission's enabling act authorizes it to adopt administrative rules. *Id.* DOPL is charged with administering the laws regulating professions, trades, and occupations it oversees, including the Athletic Commission. *See* I.C. §§ 54-401, 67-2604(1). DOPL serves as an agent to the Athletic Commission. *See* I.C. § 54-403(1). As such, and among other responsibilities, DOPL administers financing and funding for the Athletic Commission to carry out the Athletic Commission's statutory duties. *See* I.C. §§ 54-412, 67-2608. DOPL is also charged with the duty to ensure professions governed by subsidiary agencies—such as the Athletic Commission—are properly regulated. *See* I.C. § 67-2604(1)(g) ("[T]he administrator may: . . . Implement processes and promulgate rules for the administration of the chapters of those agencies assigned to the division[.]"). As a result, both DOPL and the Athletic Commission are responsible for regulating amateur and professional athletic contests in Idaho, and both have been charged with promulgating administrative rules.

Petitioners have established the first standing prong, which requires demonstrating a "palpable injury," which is "an injury that is easily perceptible, manifest, or readily visible." *Coeur d'Alene Tribe*, 161 Idaho at 513, 387 P.3d at 766 (citation omitted). Petitioners alleged that they "have been injured by the Respondent's [sic] failure to publish its administrative rules because the State Athletic Commission has no rules that have the force and effect of law, thereby prejudicing its ability to protect the public health, safety and welfare relating to competitions in Idaho." Petitioners have demonstrated a palpable injury because, without any administrative rules, Petitioners are unable to execute their shared statutory duties to regulate amateur and professional athletic contests in Idaho.

Petitioners have also demonstrated the second standing prong, which requires demonstrating a "fairly traceable causal connection between the claimed injury and the challenged conduct." *Id*. Petitioners argue that Respondents' refusal to publish their proposed rules was based on an unconstitutional legislative preapproval process. Petitioners further allege that they met all the requirements for their pending rules to become final, other than receiving legislative preapproval. As a result, they contend that the legislative preapproval requirement caused their pending rules to expire. We conclude that Petitioners have demonstrated that there is a fairly traceable, causal link between the legislative preapproval process and Petitioners' alleged injury.

We are not persuaded by the Legislature's argument that the availability of temporary rulemaking breaks the causal chain between the allegedly unconstitutional preapproval process

12

and Petitioners' injury. The Legislature's argument is that Petitioners' injury was self-inflicted because they did not seek to promulgate temporary rules. While it is true that litigants cannot manufacture standing through self-inflicted injury, *see Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013), courts have consistently held that, to the extent an injury is alleged to be self-inflicted, it must be "so completely due to the [complainant's] own fault as to break the causal chain." *Petro-Chem Processing, Inc. v. EPA*, 866 F.2d 433, 438 (D.C. Cir. 1989) (alteration in original) (citations omitted); *see also Nat. Res. Def. Council, Inc. v. U.S. Food & Drug Admin.*, 710 F.3d 71, 85 (2d Cir. 2013); *Buchholz v. Meyer Njus Tanick, PA*, 946 F.3d 855, 866 (6th Cir. 2020); *Young Conservatives of Tex. Found. v. Smatresk*, 73 F.4th 304, 310 (5th Cir. 2023).

The basis of Petitioners' claim is that the legislature has unconstitutionally infringed on their ability to promulgate administrative rules. Therefore, we conclude that Petitioners' failure to seek and promulgate temporary rules does not compel the conclusion that their injury is "so completely due to [their] own fault as to break the causal chain." *E.g.*, *Petro-Chem Processing, Inc.*, 866 F.2d at 438. If, as alleged, Idaho code section 67-5224(5)(c) is unconstitutional, and if those provisions are what prevented Petitioners from obtaining final rules with the force and effect of law, that establishes a causal connection between the challenged provisions and the claimed injury.

Finally, Petitioners have demonstrated that a writ of mandate would redress their alleged injury. The third standing prong requires demonstrating that "a favorable decision is likely to redress [the] injury," and is not "only speculative that a favorable decision will redress the injury." *Zeyen*, 165 Idaho at 698, 451 P.3d at 33 (alteration in original) (quoting *Tucker v. State*, 162 Idaho 11, 24, 394 P.3d 54, 67 (2017)). Although the second and third prongs overlap, they "are distinct insofar as causality examines the connection between the alleged misconduct and injury, whereas redressability analyzes the connection between the alleged injury and requested judicial relief." *Tucker*, 162 Idaho at 24, 394 P.3d at 67 (citation omitted). Petitioners allege that the legislative preapproval provisions are unconstitutional and, as a result, Respondents had a clear legal duty to publish the Athletic Commission's 2022 Rules in the Idaho Administrative Code. If Petitioners are correct, then relief in the form of a writ of mandate would redress Petitioners' alleged injury.

Having met all three prongs, we conclude that Petitioners have demonstrated standing to maintain this original action. Because Petitioners have established standing based on their allegation that they have been injured because they are unable to carry out their statutory duties,

13

we do not address DOPL's separately alleged injury concerning the additional monetary costs it incurred as a result of the legislative preapproval provisions.

## C. Petitioners are not entitled to a writ of mandamus compelling Respondents to publish the 2022 Rules in the Idaho Administrative Code.

We now turn to the merits of Petitioners' claim seeking a writ of mandamus compelling Respondents to publish the Athletic Commission's 2022 Rules in the Idaho Administrative Code. Respondent Hunt advised Petitioners that he could not publish the 2022 Rules because they were not approved via concurrent resolution. Petitioners assert that Respondents had a clear legal duty to publish the rules because "the Legislative Pre-Approval provisions" of the APA violate the Idaho Constitution. Therefore, Petitioners contend that the Athletic Commission's 2022 Rules should have been considered final rules when the agency promulgated them.

Resolving the merits of Petitioners' writ claim requires us to determine whether Idaho Code section 67-5224(5)(c) (2020) violated the Idaho Constitution. Petitioners assert that the statute's requirement that the legislature approve pending fee rules before they can be legally effective violates three separate provisions of the Idaho Constitution: (1) the separation of powers provision in Article II, section 1; (2) the enactment and presentment requirements in Article III, sections 1 and 15 and in Article IV, section 10; and (3) the administrative rules provision contained in Article III, section 29.

When possible, this Court is "obligated to seek an interpretation of a statute that upholds it[s] constitutionality" and "[t]he Court's power to declare legislative action unconstitutional should be exercised only in clear cases." *Planned Parenthood Great Nw. v. State*, 171 Idaho 374, 397, 522 P.3d 1132, 1155 (2023) (internal quotation marks and citation omitted). Additionally, "[t]he party challenging a statute on constitutional grounds bears the burden of establishing that the statute is unconstitutional and must overcome a strong presumption of validity." *Id.* (internal quotation marks omitted) (quoting *CDA Dairy Queen, Inc. v. State Ins. Fund*, 154 Idaho 379, 382, 299 P.3d 186, 189 (2013)).

We are not persuaded by Petitioners' constitutional challenges and deny the Petition for a Writ of Mandate. We reject their separation of powers argument because our 1990 decision in *Mead v. Arnell* established that administrative rulemaking, regardless of whether it involves pending or final rules, is a <u>statutory</u> grant of authority by the legislative branch to the executive branch, not a <u>constitutional</u> grant of authority to the executive. We reject their enactment and presentment challenges for the same reasons we rejected those challenges in *Mead*. Lastly, we

reject Petitioners' assertion that Article 3, section 29 of the Idaho Constitution limits legislative review of administrative rules to final rules and precludes the legislature from requiring review of pending rules.

1.  *Section 67-5224(5)(c) does not violate the separation of powers provision of the Idaho Constitution.*

Petitioners argue that the legislative preapproval requirement for pending fee rules violates the separation of powers provision contained in Article II, section 1 of the Idaho Constitution because it usurps the powers of the executive branch. They argue that once the legislature, in Idaho Code section 54-406(1), tasked the Athletic Commission with promulgating administrative rules, then the promulgation of those rules became an executive function with which the legislature was not permitted to interfere. Respondents do not address the merits of Petitioners' claim, but instead ask us to issue a decision that provides them guidance on this issue. The Legislature opposes Petitioners' request for a writ and argues that this Court already held in *Mead* that legislative review of administrative rules did not violate the separation of powers provision of the Idaho Constitution. In response to the Legislature's arguments, Petitioners do not ask us to overrule *Mead*, but instead assert that it does not apply here because it only addressed the legislature's ability to review final rules while this case concerns the review of pending rules.

We begin our analysis with our decision in *Mead*. In *Mead*, the Idaho Legislature, by concurrent resolution, rescinded the Idaho Board of Health and Welfare's ("Board") final rules concerning subsurface sewage disposal systems, reissued the Board's final rules from the previous year, and ordered the Board to begin promulgating new rules that complied with the legislature's intent. 117 Idaho at 662, 791 P.2d at 412. The legislature had rescinded the rules pursuant to Idaho Code section 67-5218 (1985). The Board refused to promulgate new rules and instead filed an original action in this Court, requesting this Court to issue a declaratory judgment that section 67-5218 was unconstitutional and to also issue writs of prohibition and mandate to command the legislature's acquiescence to the Board's new rules. *Id*.

The Board raised several arguments concerning why the statute was unconstitutional. Relevant to Petitioners' arguments in this case are the Board's arguments that the statute violated the separation of powers and presentment and enactment provisions of the Idaho Constitution. With regard to its separation of powers argument, the Board argued that the power to reject administrative rules interfered with the executive's constitutionally mandated duty to enforce the laws of this state:

15

The Board argues that by granting the legislature the power to reject administrative rules, I.C. § 67-5218 violates the doctrine of separation of powers as provided in article 2, § 1 of the Idaho Constitution. It does so, the Board urges, by allowing the legislature to impinge on the executive department's constitutionally mandated duty to execute the laws of this state.

*Id*. at 667, 791 P.2d at 417.

We began our analysis of that argument by looking to the Idaho Constitution's provisions concerning lawmaking:

Article 2, § 1 of the Idaho Constitution provides for the separation of powers among the three branches of Idaho's government. Article 3, § 1 provides that the power to pass bills is vested in the legislature. Article 3, § 15 provides that, "[n]o law shall be passed except by bill, . . ." Read together, these three constitutional provisions stand for the proposition that, of Idaho's three branches of government, only the legislature has the power to make "law."

*Id.* at 664, 791 P.2d at 414 (alterations in original) (citations omitted). We then recognized that, while the power to make laws lies exclusively with the legislature, "the legislature may constitutionally leave to administrative agencies the selection of the means and the time and place of the execution of the legislative purpose, and to that end may prescribe suitable rules and regulations." *Id.* (quoting *State v. Taylor*, 58 Idaho 656, 664, 78 P.2d 125, 128 (1938)). We held that agency rulemaking authority was not the equivalent of a constitutional power, but instead was one derived from the legislature:

Rule making [sic] that comes from a legislative delegation of power is neither the legal nor functional equivalent of constitutional power. It is not constitutionally mandated; rather it comes to the executive department through delegation from the legislature.

*Id.* at 665–67, 791 P.2d at 415–17. We then held that the statute did not violate separation of powers because rulemaking was not a constitutional authority reserved to the executive branch. *Id.*

The Board's presentment and enactment challenge asserted that "since regulations have the 'force and effect of law' they can only be rejected by something of 'equal dignity.'" *Id.* at 668, 791 P.2d at 418. The Board argued that the regulations could not be rejected through concurrent resolution, but only through a bill passed by the house and senate and presented to the governor for his signature. *See id.* When analyzing this argument, we drew a distinction between statutory law and administrative rules. We concluded that administrative rules "do not rise to the level of statutory law" and are "less than the equivalent of statutory law." *Id*. at 664–65, 791 P.2d at 414–15. The administrative rules at issue were not promulgated by the legislature through legislative

enactment, but instead were promulgated by an agency pursuant to statutory authority granted by the legislature. *Id.* at 668, 791 P.2d at 418. We also noted that the APA, including Idaho Code section 67-5218 (1985), was enacted through bicameralism and presentment to the governor. *Id.* at 666, 791 P.2d at 416. Finally, because the administrative rules in question were adopted pursuant to a legislative delegation of authority, we noted that they could likewise be rejected as provided in Idaho Code section 67-5218 (1985) because that statute was properly enacted pursuant to the enactment and presentment clauses. *Id.*

Two justices dissented from the separation of powers portion of the holding in *Mead*. Justice Johnson argued that, once the legislature delegated rulemaking authority by statute, the sole mechanism by which the legislature may reject or modify a rule for failure to comply with legislative intent was through subsequent legislation repealing or amending the agency's enabling statute. *Id.* at 672–73, 791 P.2d at 422–23 (Johnson, J., concurring in part and dissenting in part). Justice Johnson argued that a concurrent resolution cannot override the exercise of "administrative authority," which he characterized as distinct from legislatively delegated rulemaking authority:

> If the legislature by concurrent resolution can nullify the rules of an administrative agency, then that agency has, in effect, become no more than an arm of the legislature, subject to its management. This would improperly breach the separation between the legislative and executive departments.

*Id.* at 675–77, 791 P.2d at 425–27. Justice Bistline dissented separately, but echoed Justice Johnson's argument that the proper way to reject administrative rules was by enactment of legislation instead of a joint resolution. *Id.* at 679, 791 P.2d at 429 (Bistline, J., dissenting).

Twenty-six years after this Court's decision in *Mead*, the people of Idaho amended our constitution to include Article III, section 29, which permits legislative review of administrative rules:

> The legislature may review any administrative rule to ensure it is consistent with the legislative intent of the statute that the rule was written to interpret, prescribe, implement or enforce. After that review, the legislature may approve or reject, in whole or in part, any rule as provided by law. Legislative approval or rejection of a rule is not subject to gubernatorial veto under section 10, article IV, of the constitution of the state of Idaho.

Idaho Const. art. III, § 29. The legislative history of the amendment shows that the drafters of Article III, section 29 intended to enshrine the legislature's ability to review, approve, and reject rules of agencies as described by *Mead*. *See Administrative Rules: Debate on H.J.R. No. 5 Before the House of Representatives*, at 2:54:57, 63rd Leg., 2d Reg. Sess. (Idaho Mar. 14, 2016)

17

(statement of Rep. Tom Loertscher)[2] (sponsoring representative of the 2016 constitutional amendment that would become Article III, section 29, explaining that the amendment was meant to constitutionalize *Mead*); *see* Idaho Secretary of State, Idaho Voters' Pamphlet Concerning Proposed Constitutional Amendment HJR 5, at 5 (Nov. 8, 2016)[3] (Legislative Council's Statements FOR the Proposed Amendment explaining to the voters of Idaho that "Idaho's Supreme Court previously held [in *Mead*] that statute valid, a future supreme court could potentially declare it invalid" and that "[t]he proposed constitutional amendment would protect the legislature's authority to ensure that agency rules conform with legislative intent.").

Petitioners and the Legislature disagree as to whether our decision in *Mead* applies to Petitioners' claims challenging the legislative review of pending rules. Petitioners contend that *Mead* does not control because it expressly stated that its holding was limited to the legislative review of fully promulgated, final administrative rules, while this action concerns legislative preapproval of pending administrative rules. Petitioners rely on a single sentence from *Mead* to support this assertion:

> We deal here only with the rejection of an administrative regulation. The perceived mischief is not present, or possible, in rejection of a rule or regulation. <u>This holding should not be deemed to apply to any situations, set of facts or possible application other than the rejection of an administrative rule or regulation that has been promulgated pursuant to legislatively delegated authority.</u> The use of a Concurrent Resolution, as provided for in I.C. § 67-5218, does not bestow any greater dignity, power or authority on a Concurrent Resolution other than that provided in I.C. § 67-5218 for rejecting a rule or regulation.

*Mead*, 117 Idaho at 668, 791 P.2d at 418 (emphasis added). Petitioners' interpretation that the emphasized sentence indicates the holding only applies to legislative review of final rules is incorrect for two reasons. First, a careful reading of *Mead* shows that the context behind this statement, *i.e.*, the "mischief" which the Court said was not present, was the argument that the legislature could avoid including provisions of law in a statute and instead later insert those provisions in a rule or regulation. When read in context, the sentence stating that the holding only applies to the rejection of administrative rules promulgated pursuant to legislatively delegated authority is an indication that the Court was not ruling that an agency may avoid properly legislating substantive law by including it in a rule or regulation.

---

[2] Available at https://insession.idaho.gov/IIS/2016/House/Chambers/HouseChambers03-14-2016.mp4.
[3] Available at https://sos.idaho.gov/ELECT/Inits/2016/2016%20Voters%20Pamphlet.pdf.

More importantly, Petitioners fail to appreciate that the underpinnings of *Mead*—that rulemaking is a grant of legislative authority, not a constitutional power—applies with equal force to both final and pending rules. Because rulemaking authority is derived from the legislative delegation of authority, the legislature is free to modify the process by which administrative rules are enacted, *i.e.*, the legislature is free to condition its delegation of rulemaking authority by requiring agencies to follow the processes outlined in the APA. Those processes are duly enacted pursuant to the enactment and presentment clauses. Petitioners have failed to articulate why this Court's holding in *Mead* that rulemaking is a legislative delegation of authority applies with any less force to pending rules than it does to final rules.

Instead, Petitioners contend that, once the legislature delegated authority to the Athletic Commission to promulgate administrative rules, that authority became constitutional in nature because Article IV, section 1 of the Idaho Constitution charges the executive department with performing "such duties as are prescribed by this Constitution and as may be prescribed by law[.]" Petitioners argue that, by requiring legislative approval of pending rules, the legislature is impeding their ability to promulgate administrative rules, which is a duty prescribed by law. Petitioners fail to acknowledge, however, that this Court rejected that very argument in *Mead*:

> The Board's argument is misapplied in this case. Here, the legislative action has not invalidated the executive department's "execution of law." Such would be the case, for instance, if the legislature had passed a concurrent resolution to prevent the Attorney General from taking legal action for some violation of a statute. Enforcing the law of this state is a constitutionally mandated executive department function resting in the office of the Attorney General. In such a case no delegation would be involved. Conversely, in this case, the Board's rule making [sic] power comes from a legislative delegation. Rule making [sic] that comes from a legislative delegation of power is neither the legal nor functional equivalent of constitutional power.

*Mead*, 117 Idaho at 667, 791 P.2d at 417 (emphasis omitted).

In their reply brief, Petitioners assert for the first time that Article IV, section 20 confers constitutional rulemaking authority on the executive branch. We do not consider arguments raised for the first time in a reply brief because other parties have not been provided an opportunity to respond to them. *Gray v. Gray*, 171 Idaho 128, 144, 518 P.3d 1185, 1201 (2022) (citing *Thomas v. Med. Ctr. Physicians, P.A.*, 138 Idaho 200, 206, 61 P.3d 557, 563 (2002)). However, even if we considered this argument, it is unpersuasive. The plain language of the referenced constitutional

provision does not grant rulemaking authority to the executive branch, but instead provides for a limitation on the number of departments within the executive branch. Idaho Const. art. IV, § 20.

In sum, Petitioners have failed to demonstrate why the underpinnings of this Court's decision in *Mead* do not apply to both final and pending administrative rules. While Petitioners' arguments echo Justice Johnson's and Justice Bistline's dissents, a majority of this Court rejected those views. Petitioners have not asked us to overrule *Mead*. Moreover, the arguments presented in this case provide no reason why the decision reached in *Mead* is not applicable to this case. Rulemaking is not a constitutional delegation of authority to the executive branch but is instead a legislative delegation of authority. *Mead*, 117 Idaho at 665, 791 P.2d at 415. Because Petitioners have no constitutional authority to promulgate administrative rules, Idaho Code section 67-5224(5)(c) does not violate the separation of powers provision of the Idaho Constitution.

2. *Section 67-5224(5)(c) does not violate the enactment and presentment provisions of the Idaho Constitution.*

Petitioners next argue that section 67-5224(5)(c) violates three provisions of the Idaho Constitution: (1) Article III, section 1 because it creates rules that have the force and effect of law without a bill that contains the enacting clause, "[b]e it enacted by the Legislature of the State of Idaho"; (2) Article III, section 15 because it creates laws by concurrent resolution when the constitution requires that "[n]o law shall be passed except by bill" that is passed by both houses of the legislature; and (3) Article IV, section 10 because it creates laws without first presenting those laws to the governor with the opportunity to veto. The Legislature argues that our decision in *Mead* also forecloses these arguments.

Once again, we reject Petitioners' arguments for the reasons set forth in *Mead*. We addressed these same questions there and concluded that administrative rules "do not rise to the level of statutory law." *Mead*, 117 Idaho at 664, 791 P.2d at 414. Therefore, the legislature is not required to comply with Article III, sections 1, 5, and 10 when it approves or rejects an administrative fee rule. *Id*. at 668, 791 P.2d at 418. Again, Petitioners have not asked us to overrule *Mead*. Moreover, for the reasons discussed previously, they have failed to demonstrate that, from a constitutional perspective, there is any meaningful difference between pending and final administrative rules. We, therefore, reject Petitioners' enactment and presentment arguments for the same reasons this Court rejected those same arguments in *Mead*.

3. *The out-of-state cases cited by Petitioners do not mandate a different result.*

In support of their separation of powers, enactment, and presentment arguments, Petitioners cite five cases from other states holding that legislative preapproval of administrative rules is unconstitutional under their respective state constitutions. *See Blank v. Dep't of Corrs.*, 611 N.W.2d 530 (Mich. 2000); *Gen. Assembly of State of N.J. v. Byrne*, 448 A.2d 438 (N.J. 1982); *Legislative Rsch. Comm'n ex rel. Prather v. Brown*, 664 S.W.2d 907 (Ky. 1984); *Mo. Coal. for the Env't v. Joint Comm. on Admin. Rules*, 948 S.W.2d 125 (Mo. 1997) (en banc); *State ex rel. Barker v. Manchin*, 279 S.E.2d 622 (W. Va. Ct. App. 1981). Petitioners argue that these cases provide persuasive authority that the Idaho Constitution similarly precludes the legislature from requiring legislative preapproval of administrative rules. We are not persuaded by these out-of-state cases because they conflict with the constitutional principles we articulated in *Mead*.

In *Blank*, the Michigan Supreme Court held that legislative preapproval violated the separation of powers, enactment, and presentment requirements in the Michigan Constitution. *See* 611 N.W.2d at 535–39. The Michigan Supreme Court found the United States Supreme Court's decision in *Immigration and Naturalization Service v. Chadha*, 462 U.S. 919 (1983), persuasive and applicable to the Michigan Constitution. *Blank*, 611 N.W.2d at 536. In relying on this case, Petitioners fail to recognize or grapple with the fact that we rejected those arguments in *Mead* and, instead, embraced the reasoning articulated in Justice White's dissent in *Chadha*. *See Mead*, 117 Idaho at 667–68, 791 P.2d at 417–18. Indeed, in *Blank*, the Michigan Supreme Court expressly rejected this Court's reasoning in *Mead*. *Blank*, 611 N.W.2d at 539. Thus, *Blank* is unpersuasive because the Michigan Supreme Court decided the constitutionality of legislative preapproval based on constitutional principles we expressly rejected in *Mead*.

Similar distinctions exist in the remaining out-of-state cases on which Petitioners rely. In *Byrne*, the New Jersey Supreme Court held that legislative preapproval violated the separation of powers provision of the New Jersey Constitution because it interfered with the executive's constitutional duty to enforce the law and violated its presentment requirement because legislative preapproval amounted to amending or repealing legislation without approval by the governor. *Byrne*, 448 A.2d at 443–48. In *Brown* and *Missouri Coalition for the Environment*, the respective state supreme courts assigned constitutional significance to administrative rulemaking as an executive function. *See Brown*, 664 S.W.2d at 919 ("The adoption of administrative regulations necessary to implement and carry out the purpose of legislative enactments is executive in nature

21

and is ordinarily within the constitutional purview of the executive branch of government."); *Missouri Coal. for the Env't*, 948 S.W.2d at 133–34 ("Promulgation of rules and regulations is an executive function. . . . Once the legislature 'makes its choice in enacting legislation, its participation ends.'" (quoting *Bowsher v. Synar*, 478 U.S. 714, 733–34 (1986))). The West Virginia Supreme Court of Appeals' decision in *Manchin* rested on the practical equivalence of regulatory and statutory law. *See Manchin*, 279 S.E.2d at 631 ("Once the executive officer or agency has made and adopted valid rules and regulations pursuant to the grant of the legislative powers, they take on the force of statutory law."). Because administrative rules have the force and effect of law, the West Virginia high court concluded that its legislature must follow formal enactment requirements. *Id.* at 633 ("Where it seeks to give legal force to informal actions, the legislature exceeds the limits of its constitutional authority.").

Similar to the Michigan Supreme Court's decision in *Blank*, each of the out-of-state cases Petitioners rely on are based on jurisprudence that is directly at odds with the constitutional principles this Court embraced in *Mead*. For the reasons discussed above, and based upon this Court's jurisprudence, we find no constitutional distinction between final and pending rules. While we understand the difficulties that a situation such as this presents for agencies like the Athletic Commission, stare decisis dictates that we continue to follow our decision in *Mead* in this instance.

*4. Section 67-5224(5)(c) does not violate Article III, section 29 of the Idaho Constitution.*

Petitioners' final argument is that the statute is unconstitutional because Article III, section 29 of the Idaho Constitution limits legislative review to final rules and, therefore, the legislature has no authority to review pending rules. They argue that Article III, section 29 should be interpreted as a strict limitation on the legislature's authority to review administrative rules. The Legislature responds that the plain language of Article III, section 29 imposes no such limitation on its ability to review administrative rules.

Petitioners' argument requires us to interpret the language of Article III, section 29. "The general rules of statutory construction apply to constitutional provisions generally . . . ." *Westerberg v. Andrus*, 114 Idaho 401, 403 n.2, 757 P.2d 664, 666 n.2 (1988). "[S]tatutory interpretation begins with the literal language of the statute. If the statutory language is unambiguous, we need not engage in statutory construction and are free to apply the statute's plain meaning." *Nordgaarden v. Kiebert*, 171 Idaho 883, 890, 527 P.3d 486, 493 (2023) (alteration in original) (quoting *Callies v. O'Neal*, 147 Idaho 841, 847, 216 P.3d 130, 136 (2009)). "An

ambiguous statutory or constitutional provision is one where reasonable construction of the language can result in more than one meaning." *Reclaim Idaho v. Denney*, 169 Idaho 406, 427, 497 P.3d 160, 181 (2021). "The fundamental object in construing constitutional provisions is to ascertain the intent of the drafters by reading the words as written, employing their natural and ordinary meaning, and construing them to fulfill the intent of the drafters." *Sweeney v. Otter*, 119 Idaho 135, 139, 804 P.2d 308, 312 (1990). "That intent comes from the words approved by the drafters and later adopted by the people." *Idaho Press Club, Inc. v. State Legislature*, 142 Idaho 640, 642, 132 P.3d 397, 399 (2006).

We hold that the plain language of Article III, section 29 is unambiguous and permits the legislature to review both final and pending rules:

> The legislature may review <u>any administrative rule</u> to ensure it is consistent with the legislative intent of the statute that the rule was written to interpret, prescribe, implement or enforce. After that review, the legislature may approve or reject, in whole or in part, any rule as provided by law. Legislative approval or rejection of a rule is not subject to gubernatorial veto under section 10, article IV, of the constitution of the state of Idaho.

Idaho Const. art. III, § 29 (emphasis added). There is no reasonable construction of the phrase "any administrative rule" that would suggest it was intended to limit legislative review to only final rules. Rather, the use of "any" in Article III, section 29 recognizes the legislature's broad authority to review *all* administrative rules, regardless of which step they are at in the rulemaking process. "Where a statute or constitutional provision is clear we must follow the law as written." *Pentico v. Idaho Comm'n for Reapportionment*, 169 Idaho 840, 843, 504 P.3d 376, 379 (2022) (citation omitted). "It is not reasonable to assume that [the drafters] intended to impose other, unstated limitations. Had they wanted to impose limitations in addition to those stated, they could easily have done so." *Idaho Press Club, Inc.*, 142 Idaho at 643, 132 P.3d at 400.

Petitioners assert, based on several dictionary definitions, that we should construe the phrase "any administrative rule" as limiting review to final rules. "This Court often turns to dictionary definitions '[t]o ascertain the ordinary meaning of an undefined term in a statute . . . .' The statute need not be ambiguous to resort to dictionaries to determine the ordinary meaning of a term." *State v. Bodenbach*, 165 Idaho 577, 586, 448 P.3d 1005, 1014 (2019) (alterations in original) (internal citations omitted). Petitioners contend that Black's Law Dictionary defines "administrative rule" as "an officially promulgated agency regulation that has the force and effect of law," *Administrative Rule*, Black's Law Dictionary (10th ed. 2014), and defines "promulgate"

23

as "[t]o put (a law or decree) into force or effect" and "([o]f an administrative agency) to carry out the formal process of rulemaking by publishing the proposed regulations, inviting public comments, and approving or rejecting the proposal," *Promulgate*, Black's Law Dictionary (11th ed. 2019). Putting these definitions together, Petitioners contend that, as used in Article III, section 29, "any rule" only encompasses final rules that have the force and effect of law.

Although Petitioners are correct that this Court does at times resort to dictionaries to assist with the interpretation of otherwise undefined words in a statute, there is no need to resort to dictionaries in this case because at the time the voters adopted Article III, section 29, the APA defined several types of administrative rules. In 2016, the APA recognized and defined four types of administrative rules that were differentiated according to the point they were at in the administrative rulemaking process:

> (9) "Final rule" means a rule that has been adopted by an agency under the regular rulemaking process and is in effect.
>
> . . . .
>
> (14) "Pending rule" means a rule that has been adopted by an agency under the regular rulemaking process and remains subject to legislative review.
>
> . . . .
>
> (16) "Proposed rule" means a rule published in the bulletin as provided in section 67-5221, Idaho Code.
>
> . . . .
>
> (23) "Temporary rule" means a rule authorized by the governor to become effective before it has been submitted to the legislature for review and which expires by its own terms or by operation of law no later than the conclusion of the next succeeding regular legislative session unless extended or replaced by a final rule as provided in section 67-5226, Idaho Code.

I.C. § 67-5201(9), (14), (16), (23) (2016). The APA's recognition of four different types of administrative rules, the same year that Article III, section 29 was adopted, further supports our conclusion that the term "any administrative rule" does not limit legislative review to final rules.

Petitioners also argue that, at the time the constitutional amendment was adopted, the APA defined the term "rule" as "the whole or a part of an agency statement of general applicability that has been promulgated in compliance with the provisions of this chapter and that implements, interprets, or prescribes . . . [l]aw or policy; or [t]he procedure or practice requirements of an agency." I.C. § 67-5201(19) (2016) (emphasis added). Petitioners contend that, because Article III, section 29 permits the legislature to approve or reject "any rule," and because the APA defined

24

rule as one promulgated in compliance with the APA, then the amendment limits legislative review to final rules because those are the only rules that were promulgated in compliance with the APA. We are not persuaded by this argument because Petitioners have taken the phrase "any rule" out of context. When the phrase is read in the context of the entirety of Article III, section 29, we conclude that "any rule" is a reference to the term in the prior sentence—"any administrative rule." As a result, both phrases refer to the same concept—all administrative rules, including pending and final rules. Therefore, Idaho Code section 67-5224(5)(c) does not violate Article III, Section 29 of the Idaho Constitution.

## IV. CONCLUSION

For the foregoing reasons, the Petition for a declaratory judgment is dismissed and the Petition for a writ of mandamus is denied.

Chief Justice BEVAN, Justices BRODY and MOELLER, and Pro Tem Justice HIPPLER CONCUR.